# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MICHAEL PANNONE,

                Plaintiff,

      v.

CITC ENTERPRISES, INC.,

                Defendant.

Case No. 3:24-cv-00220-SLG

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT, MOTION FOR SPOLIATION SANCTIONS, AND MOTION TO ASSERT PRIVILEGE

This order addresses three pending motions before the Court.

First, at Docket 40 is a Motion for Summary Judgment by Defendant CITC Enterprises, Inc. ("CITCE"). Plaintiff Michael Pannone responded in opposition at Docket 43, to which Defendant replied at Docket 47. The Court heard oral argument on the motion on September 17, 2025.[1] Second, at Docket 58 is Defendant's Motion for Case Terminating Spoliation Sanction. Plaintiff responded in opposition at Docket 65, to which Defendant replied at Docket 69. Third, at Docket 56 is Plaintiff's Motion to Assert Privilege Re: Deep Forest Forensic Analysis. Defendant responded in opposition at Docket 59. Plaintiff did not file a

---

[1] Docket 55. Plaintiff's opposition to the summary judgment motion frequently cites to an "Affidavit of Michael Pannone: In Support of Opposition to Summary Judgment." However, as of the date of this order, no such document has been filed with the Court. At oral argument, counsel for Plaintiff stated that the "substance of the evidence is provided" in the other filings with the Court. Docket 75 at 16. The Court has not relied on any statements in the opposition that are supported solely by a reference to a Pannone affidavit.

reply.  The Court heard oral argument on the second and third motions on October 7, 2025.[2]

## BACKGROUND

### I. Summary Judgment Claims

The facts, viewed in the light most favorable to Plaintiff for purposes of this summary judgment motion, are as follows:

Plaintiff was employed at CITCE from March 30, 2020, until his termination on June 9, 2023.[3]  He was 61 years old at the time of his termination.  Plaintiff's job title initially was "Senior Database Developer" and later became "Senior Developer."[4]  Plaintiff was responsible for automating the integration among CITCE's systems.[5]  In February 2021, Defendant hired Andrew Chlup as the Senior Director of IT at CITCE, who, according to Plaintiff's opposition, was under 40 years old when he was hired.[6]  In March 2021, Mr. Chlup encouraged Plaintiff to apply for the open Enterprise Manager position; Plaintiff applied but was not selected for that position.[7]  Instead, CITCE selected Flor Malto, who became

---

[2] Docket 70.

[3] Docket 40-1 at 118, 120, 126.

[4] Docket 40-1 at 125.

[5] *See* Docket 17-1 at 169-171; Docket 58-3 at 2, 4-5.

[6] *See* Docket 43 at 8.  In his opposition, Plaintiff asserts that when Mr. Chlup was hired in 2021, Mr. Chlup was under 40 years old; in an undated organizational chart, Plaintiff asserts that Mr. Chlup's age is "~40 yo." Docket 43-7 at 1.  *Cf.* Docket 47-2 at 2 ("[Mr. Chlup] can't be much over 40.").

[7] Docket 40-1 at 13-15.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 2 of 39

Plaintiff's direct supervisor.[8]  Like Mr. Chlup, Plaintiff asserts that Mr. Malto was approximately 40 years old.[9]  While employed at CITCE, Plaintiff received several pay increases, received positive reviews in 2021 and 2022, and was "proven to be a strong technical lead" while "working with other team members to ensure that the work was getting done."[10]

Plaintiff asserts that the IT Department favored younger employees over its existing older employees.  First, he maintains that in March 2020, six of the eight employees within Plaintiff's department were over 40 years old; by June 2023, five of those six older employees no longer worked at CITCE.[11]  Plaintiff believes that their departures were part of the "house cleaning that was going on" "to push all the old guys out."[12]  One such employee was John Regan, MIS Manager and Developer, who was employed at CITCE for 15 years; Mr. Pannone indicates that

---

[8] Docket 40-1 at 16.

[9] At his deposition, Mr. Malto testified that two new IT systems analysts and himself are all approximately 40 years old. Docket 43-1 at 21. In his undated organizational chart, Plaintiff states that Mr. Malto's age is "~40 yo." Docket 43-7 at 1.

[10] Docket 40-1 at 112.  Mr. Malto's October 2022 evaluation of Mr. Pannone stated: "[Y]ou have met or exceeded all of the duties outlined in your current job description. You are very well rounded and versed in current technologies." Docket 40-1 at 96, 99. *See also* Docket 40-1 at 79-86 (March 30, 2021 performance evaluation conducted by John Regan); Docket 40-1 at 96-103 (October 1, 2022 performance evaluation conducted by Flor Malto); and Docket 40-1 at 109-117 (March 30, 2022 performance evaluation conducted by Flor Malto).

[11] Docket 43-7 at 1; Docket 43 at 8-9.

[12] Docket 47-2 at 2; Docket 40-1 at 38. Plaintiff also identified Dennis Szelinsky and Win Grawe as two co-workers above the age of 40 that "were treated disparately, subjected to harsher treatment or criticism, or forced to quit" in March 2021 when Mr. Chlup joined CITCE. Docket 40-1 at 127.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 3 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 3 of 39

at the time of his departure, Mr. Regan was 63 years old.[13] Second, with the new team structure, Plaintiff felt systematically excluded from meaningful assignments and major projects.[14] He believed that his supervisors gave preferential treatment to younger employees.[15]

Plaintiff maintains that newer employees, who were all considerably younger than him, were given duties and responsibilities greater than what Plaintiff had, despite Plaintiff's seniority and 30 years of IT experience.[16] While Plaintiff testified that he never heard Mr. Chlup say anything that directly reflected discriminatory animus against older employees, Plaintiff maintains that Mr. Chlup's actions "have indicated that there is a preference for putting the younger people in place. And that was kind of his – his goal."[17]

On September 29, 2022, Plaintiff suffered a non-work-related eye injury.[18] Plaintiff notified his supervisor, Mr. Malto, the next day.[19] On October 12, 2022,

---

[13] *See* Docket 43-7 at 1.

[14] *See e.g.*, Docket 40-1 at 24 ("[T]here [were] three major projects being worked at that point. I wasn't on any of them. And I had a growing feeling of … I was not being assigned anything. I was not being involved in any forward-facing projects.").

[15] *See e.g.*, Docket 40-1 at 38 ("[Mr. Malto] was forming a team to push out – a balloon, if you will, to push all the old guys out …. Or maybe because of the FMLA. I  -- I don't know.").

[16] *See* Docket 40-1 at 24-25, 37. *See also* Docket 58-3 at 2-3; Docket 43 at 9.

[17] Docket 40-1 at 37. Plaintiff testified that at no point did he personally hear Mr. Chlup make a comment such as, "No. Everybody over 50 is down the road." Docket 40-1 at 37.

[18] Docket 40-1 at 22, 154.

[19] Docket 40-1 at 23, 154. In his opposition, Plaintiff references his unfiled affidavit to state that on or around September 30, 2022, Mr. Malto acknowledged that it "sounded like an FMLA case" and encouraged him to pursue FMLA leave. Docket 43 at 10. However, there does not appear to be any evidence in the record to support this assertion.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 4 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 4 of 39

Plaintiff requested Family and Medical Leave Act ("FMLA") leave beginning on October 17 due to his eye condition.[20]  On October 24, 2022, Defendant notified Plaintiff that he had been approved for intermittent FMLA leave, pending receipt of a medical certification.[21]  Due to Plaintiff's absence from work while on medical leave, Mr. Malto testified that "[a]ll the projects that needed full attention we tried to move to other team members, and I tried to find work that was appropriate for his time so that he could still be productive."[22]

The parties dispute the nature and duration of Plaintiff's FMLA leave status.[23]  In his opposition, Plaintiff maintains that he was on intermittent FMLA status from October 2022 until his termination on June 9, 2023, but cites to no evidence to support this assertion.[24]  In an email from Michelle Pattison, Senior Human Resources Manager,[25] to Mr. Chlup and Mr. Malto, she states that Plaintiff was on intermittent FMLA from the months of November 2022 to January 2023.[26]

According to Plaintiff's initial physician certification, dated November 2, 2022, Plaintiff had surgical repair of his eye on October 17, 2022, and was

---

[20] *See* Docket 40-1 at 142.

[21] *See* Docket 40-1 at 142-45.

[22] Docket 43-1 at 10.

[23] Docket 43-10 at 2-3.

[24] Docket 43 at 11.

[25] Docket 17-1 at 183 ("Michelle Pattison Sr Human Resources Manager").

[26] Docket 43-12 at 4.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 5 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 5 of 39

incapacitated from October 17 through October 31, 2022.[27]  On a form dated November 3, 2022, the physician indicated that Plaintiff should be able to return to work within one to two months.[28]  Also on a form dated November 3, 2022, the physician stated that "[d]ue to the condition, it is medically necessary for the employee to work a reduced schedule" from November 7, 2022 to December 8, 2022, with no work at all the week following his surgery scheduled for November 19, 2022.[29]  No additional physician certifications are in the Court's record.  The FMLA Intermittent Log records that Plaintiff filed indicate that Plaintiff took intermittent FMLA leave from October 24, 2022 until November 25, 2022.[30]

Defendant also points to an interrogatory requesting Plaintiff "[i]dentify all requests for intermittent leave in 2023," to which Plaintiff responded: "There were no requests for FMLA in 2023. Request for intermittent FMLA was requested and approved in Oct/Nov 2022."[31]

On May 15, 2023, Plaintiff had a series of email communications with Mr. Chlup.[32]  Mr. Chlup emailed Plaintiff because he "wanted to see how [he was]

---

[27] Docket 40-1 at 150-51.

[28] Docket 40-1 at 152.

[29] Docket 40-1 at 131.

[30] Docket 43-2 at 19-23.  In March 2023, Plaintiff informed CITCE HR that he might need additional eye surgery that would require an additional two weeks leave; but in April 2023, he advised them that he was postponing any decision on that additional surgery until August. Docket 43-2 at 25-26.

[31] Docket 40-1 at 127.

[32] *See* Docket 43-9 at 1-6; Docket 40-1 at 54-59.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 6 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 6 of 39

doing and if it is starting to feel like [he is] back on the team and beginning to get more meaningful work."[33] Over a series of emails, Plaintiff responded with language such as "LMAO!" and "Ha Ha Ha Ha ! Not even a project… really?"[34] Plaintiff also responded, "No, I do not feel like I am on [Mr. Malto's] team nor that any meaningful work is escaping the chosen few. Not much else to say."[35]

On May 17, 2023, Mr. Chlup added Mr. Malto onto the same email chain, who was then able to see the prior emails from May 15, 2023 to May 17, 2023 between Mr. Chlup and Mr. Pannone.[36]

In response, on May 18, 2023, Plaintiff sent a lengthy email to Mr. Chlup and copied Mr. Malto expressing concerns about his exclusion from the team and lack of meaningful work assignments.[37] Within that email, Plaintiff state: "Ahhh there it is… He is offering you a bone, Mike… be grateful. Expected that. I am grateful every day that these are the problems . . . there are MUCH worse available. Flor is a very nice guy!"[38]

On May 23, 2023, Mr. Chlup sent an email to CITCE's Human Resources ("HR") and copied Mr. Malto, stating that "[w]e've reached a point where it has become clear that [Mr. Pannone] is not a good fit for [Mr. Malto's] team or

---

[33] Docket 40-1 at 59.

[34] Docket 40-1 at 58.

[35] Docket 40-1 at 58-59.

[36] Docket 40-1 at 56.

[37] Docket 40-1 at 54-56.

[38] Docket 40-1 at 54.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 7 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 7 of 39

management style."[39]  The communication contains no reference to Mr. Pannone having taken FMLA leave in the fall of 2022; to the contrary, it states that "[t]his latest round of concern started towards the end of Jan[uary] and there have been several attempts to get [Mr. Pannone] back on board."[40]  At HR's request, Mr. Chlup then provided details about Mr. Pannone's issues on a particular IT project in January 2023 and Mr. Pannone's email communications in May 2023.[41]

Plaintiff's employment was terminated on June 9, 2023 at a meeting with Mr. Chlup and Sara Groogan from HR.[42]  According to Defendant, Plaintiff was terminated due to his violation of CITCE's Code of Conduct requiring all employees to be "truthful, transparent, and respectful in all CITC-related communications, both internally and externally. To do this we: use CITC communication platforms, such as email and instant messaging, professionally and appropriately . . . ."[43]  The Code of Conduct is "applicable to all employees."[44]  Mr. Chlup's sworn declaration filed with CITCE's summary judgment motion states, "[b]ecause of this [May 2023 e-mail] communication [from Mr. Pannone to Mr. Chlup and Mr. Malto], I made the final decision to terminate [Mr. Pannone's] employment after consulting with Mr.

---

[39] Docket 40-1 at 108. *See also* Docket 40-1 at 104-108.

[40] Docket 43-12 at 1.

[41] Docket 43-12 at 4.

[42] Docket 40-1 at 126.

[43] Docket 40-2 at 12. *See also* Docket 40-2 at 2 ("In the communications that followed, [Mr. Pannone] used sarcastic and disrespectful language that was not in line with CITCE's Code of Conduct.").

[44] Docket 40-2 at 2.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 8 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 8 of 39

Malto and Human Resources. There was no discussion or consideration of [Mr. Pannone's] age or his prior FMLA requests in connection with the termination decision."[45]  After Plaintiff's termination, CITCE hired two systems analysts, Doug Davey and Mike Risinger, both approximately 40 years old.[46]  Defendant asserts that although Plaintiff's employment was terminated, his position was not filled.[47]

Plaintiff identifies two procedural deficiencies in how he was terminated. First, Plaintiff asserts that Defendant did not follow its progressive discipline policy, which lists progressive disciplinary steps including coaching, documented verbal warnings, written warnings, probation, suspension, or demotion before termination.[48]   Second, Plaintiff asserts that the pattern of retroactive documentation demonstrates the pretextual nature of CITCE's stated reasons.[49]

On August 15, 2024, Plaintiff initiated this action against Defendant in Alaska Superior Court; the Complaint alleges two claims for relief: a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et. seq.*, and

---

[45] Docket 40-2 at 2.

[46] Docket 43-1 at 21. *See also* Docket 43 at 38.

[47] Docket 40-1 at 75; Docket 40-2 at 3.

[48] Docket 43 at 12-13; Docket 43-1 at 16-18; *see* Docket 43-5 at 1-3. The Court notes that on pages one and two of the progressive discipline policy, CITCE expressly states that it retains the right to terminate without use of progressive disciplinary steps and at any time with or without prior notice. Docket 43-5 at 1-2.

[49] Docket 43 at 19. In this regard, Plaintiff notes that an incident involving him and Brian Benson occurred in September 2022 but was not formally documented until November 3, 2022, after Plaintiff's FMLA leave had begun. *See* Docket 40-1 at 104-08.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 9 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 9 of 39

a violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601.[50]
Defendant removed the case to this Court on October 14, 2024, based on federal
question jurisdiction.[51]

## II.    Sanctions and Privilege Claims

The factual allegations relating to prior discovery disputes and the
procedural history of this case are set forth in detail in the Court's order at Docket
72.  The Court assumes familiarity here and briefly restates the most relevant facts.

Throughout the discovery process, which started on December 30, 2024,
Plaintiff served deficient initial disclosures, provided incomplete answers to
Defendant's discovery requests, and issued overly broad discovery requests on
documents that Plaintiff already had in his possession.  Most significantly, in
December 2024, Plaintiff stated he had no CITCE documents in his possession,
but in March 2025, he produced a Personal Storage Tablet (".pst") file that
contained extensive CITCE emails and documents that Mr. Pannone had
downloaded from his CITCE email account and other files prior to his termination.

On July 25, 2025, the Court heard oral argument on CITCE's motion to
compel.[52]  The Court granted the motion with respect to a mutually-agreed-upon

---

[50] Docket 1-3 at 5-7.

[51] Docket 1 at 2.

[52] Docket 49.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 10 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 10 of 39

forensic review using an agreed-upon list of keyword searches and ordered Plaintiff to present his devices for that forensic review.[53]

On August 12, 2025, Plaintiff presented some of his devices to Mark Merchant, the forensic expert at Deep Forest Forensics.[54] Based on his review, Mr. Merchant determined that Plaintiff had deleted multiple documents from those devices despite the Court's order, which documents Mr. Merchant was unable to recover.[55] Mr. Merchant testified in his declaration that he saw instances of data destruction and the use of a "wiping utility" on Plaintiff's Hitachi drive, laptop, Sony USB drive, and cell phone.[56] Further, Plaintiff personally admitted to Mr. Merchant that he had deleted data.[57] In light of this development, Defendant filed the motion for a spoliation sanction seeking to terminate this case pursuant to Rule 37(e)(2) at Docket 58.

On September 19, 2025, Plaintiff filed a motion that purports to assert various privileges over what appears to be the bulk, if not all, of the documents

---

[53] Docket 49. The plan is summarized in a July 28, 2025 email. Docket 58-3 at 38. This plan for the forensic review was initially outlined in a May 8, 2025 email from Defendant's counsel to Plaintiff's counsel.

[54] Docket 58-1 at 1-5. These devices include a Hitachi drive, a Dell laptop, a Sony USB drive, and a One Drive account and personal vault drives associated with two email addresses. Docket 58-1 at 2-5.

[55] Docket 49; Docket 58-1 at 2-9. Although the Court did not explicitly direct Plaintiff to not delete any of his data during oral argument on the motion to compel, based on the procedure outlined in the July 28, 2025 email, all his data should have been preserved.

[56] Docket 58-1 at 3-6.

[57] Docket 58-1 at 2.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 11 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 11 of 39

that remained on Mr. Pannone's devices that were identified by Mr. Merchant.[58] Plaintiff contends that the documents are not relevant, contained confidential personal matters, and/or are protected by the attorney-client privilege. None of the documents themselves were provided to the Court. Plaintiff's counsel explained that "[t]he actual documents were not included because of the vastness of this collection."[59]

The first set of documents is titled "3:24-cv-00220-SLG Pannone v. CITCE: Privilege Log File 1" and contains what appears to be a summary of keyword search results in excel format.[60] Plaintiff's counsel states that this batch contains the information he received from Mr. Merchant. The second set of documents contains two attachments: (1) The forensic phone content report of Plaintiff's Samsung cellphone; and (2) a document titled "MiscPrivledgedItems [*sic*]."[61] The third set of documents appears to be Plaintiff's attempt to create a privilege log. In a file titled "Consolidated," Plaintiff has color-coded all of the documents that he asserts are subject to privilege. The bases for privilege that he asserts are listed in a document titled "Legend." Plaintiff appears to categorize some of the

---

[58] Docket 56.

[59] Docket 56 at 2.

[60] Counsel for Plaintiff provided the Court with all three of the privilege logs mentioned herein via email.

[61] The second document states "Other Items on which I assert privledge [*sic*]" asserting privilege over "Any and all images taken and copies thereof"; "Any reports or data resulting from analysis of digital images that are unreviewed by me or my representative"; and "Disclosed in violation of confidentiality agreement."

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 12 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 12 of 39

documents with his own categories such as "Last Modified before CITC employ."

The relief requested by Plaintiff's motion is not entirely clear; and in contravention to the applicable local rule, no proposed order was filed with it.[62] But it appears that Plaintiff is asserting that he has no additional documents that he is willing to provide to Defendant.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

## LEGAL STANDARDS

### I.    Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case."[63] If the movant meets this burden, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'"[64] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable

---

[62] District of Alaska Local Civil Rule 7.1(b)(2) ("A proposed order must be filed with all non-dispositive motions . . . ").

[63] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[64] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 13 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 13 of 39

jury could return a verdict for the non-moving party."[65]

When evaluating the record to decide a motion for summary judgment, a court must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[66] Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[67]

In evaluating a summary judgment motion on employment discrimination claims, a district court must focus on determining whether genuine issues of material fact are in dispute rather than "weighing . . . the evidence and making findings."[68] The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."[69] Still, it is proper for a district court to grant summary judgment in favor of an employer when an employee has "'created only a weak issue [of fact]' . . . against a backdrop of 'abundant and uncontroverted independent evidence that no discrimination has occurred.'"[70]

---

[65] *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

[66] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted).

[67] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz.*, 391 U.S. at 289).

[68] *Taybron v. City of San Francisco*, 341 F.3d 957, 959 (9th Cir. 2003).

[69] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted).

[70] *Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023) (internal citation omitted) (quoting *Reeves v.*

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 14 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 14 of 39

## II.     Age Discrimination in Employment Act ("ADEA")

Plaintiff's first cause of action alleges disparate treatment on the basis of his age in violation of the ADEA.[71]  "[W]hen responding to a summary judgment motion in a discrimination suit under ADEA . . . , the plaintiff may proceed by [either] using the *McDonnell Douglas* framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's contested conduct."[72]  "Under either approach, staving off a motion for summary judgment on disparate treatment claims under ADEA . . . entails three steps."[73]

In the first step, a plaintiff must establish a prima facie case of age discrimination by showing that he was (1) at least 40 years old, (2) performing his job satisfactorily, (3) discharged, and (4) "either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination."[74]  An age difference of ten years or more is presumptively substantial.[75]  "An inference of

---

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

[71] Docket 1-3 at 5-6.

[72] *Opara*, 57 F.4th at 721 (internal quotation marks omitted) (quoting *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)).

[73] *Id.*

[74] *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (alteration brackets omitted) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

[75] *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 15 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 15 of 39

discrimination can be established by showing the employer had a continuing need for the employee's skills and services in that their various duties were still being performed or by showing that others not in their protected class were treated more favorably."[76] "Under the *McDonnell Douglas* framework, the requisite degree of proof necessary to establish a prima facie case on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."[77]

If the plaintiff carries his burden of establishing a prima facie case at step one, "the burden shifts to the employer [at step two] to proffer a legitimate, nondiscriminatory reason for its decision."[78] "This burden is one of production, not persuasion, and involves no credibility assessment."[79]

If the employer meets its burden at step two, "the burden shifts back to the plaintiff [at step three] to prove that the proffered reason is a pretext for discrimination."[80]

If the case proceeds to trial, the plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."[81] "The burden of persuasion does

---

[76] *Sheppard*, 694 F.3d at 1049–50 (cleaned up) (quoting *Diaz*, 521 F.3d at 1207-08).

[77] *Opara*, 57 F.4th at 722 (internal quotation marks omitted) (cleaned up).

[78] *Caldrone v. Circle K Stores Inc.*, --- F.4th ---, 2025 WL 2811320, at *2 (9th Cir. Oct. 3, 2025) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[79] *Opara*, 57 F.4th at 723 (cleaned up) (quoting *Reeves*, 530 U.S. at 140).

[80] *Caldrone*, 2025 WL 2811320, at *2 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804).

[81] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 16 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 16 of 39

not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."[82]

## III.    Family Medical Leave Act ("FMLA")

The FMLA generally provides an eligible employee with 12 weeks of job-protected unpaid leave to address a serious health condition and makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.[83] "Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation . . . theory and the . . . interference theory."[84]

Here, Plaintiff is asserting he was terminated "in retaliation for his use of FMLA protections."[85] But at its core, Plaintiff's FMLA claim is an interference claim: "By their plain meaning, the anti-retaliation or anti-discrimination provisions [of the FMLA] do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under [29 U.S.C.] § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.'"[86]

---

[82] *Id.* at 180.

[83] 29 U.S.C. §§ 2612(a)(1)(D), 2615(a)(1).

[84] *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002)).

[85] Docket 1-3 at 5.

[86] *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 17 of 39

To prevail on his FMLA claim, Plaintiff must "prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]."[87] A plaintiff may prove this claim "by using either direct or circumstantial evidence, or both."[88] Unlike in ADEA claims, "[n]o scheme shifting the burden of production back and forth is required."[89]

## IV. Rule 37(e) Spoliation Sanctions

Federal Rule of Civil Procedure 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

---

[87] *Id*. at 1125.

[88] *Id*.

[89] *Id*. In his opposition brief, Plaintiff cites to *Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) and applies the burden-shifting framework that was set forth in that case. *Sanders,* however, is inapposite, as it involved a failure to reinstate an employee after her FMLA leave ended. The *Sanders* court expressly noted that "[i]n this circuit, we have declined to apply the type of burden shifting framework recognized in *McDonnell Douglas* to FMLA 'interference' claims; rather, '[an employee] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.'" *Sanders*, 657 F.3d at 778 (first quoting *Bachelder,* 259 F.3d at 1125; and then citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) ("While other circuits have applied the *McDonnell Douglas* framework to FMLA termination [interference] cases, this Circuit ... explicitly declined to apply this framework [to interference claims].")).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 18 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 18 of 39

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

As used in Rule 37(e)(2), "intent" means "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party."[90] "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions."[91] "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation."[92]

## DISCUSSION

Plaintiff alleges two discriminatory reasons for his termination: (1) termination due to Plaintiff's age in violation of the ADEA; and (2) termination in retaliation for Plaintiff's requesting and receiving FMLA leave. The Court considers each claim in turn.

## I.    Age Discrimination in Employment Act ("ADEA")

---

[90] *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (first citing *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023); and then citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment).

[91] *Id.* (citing *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)).

[92] *Id.* (citation omitted).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 19 of 39

Plaintiff's ADEA claim alleges that he was terminated by CITCE because of his age and replaced by younger employees.[93]  Defendant asserts that summary judgment in its favor on this claim is warranted because there is no genuine dispute as to any material fact.  CITCE maintains: (1) "[its] evidence establishes Pannone was not performing satisfactorily and it had a legitimate, non-discriminatory motive to terminate his employment"; (2) "Pannone fails to identify similarly situated peers treated differently"; and (3) "Pannone lacks direct or circumstantial proof of discriminatory intent or motive sufficient to avoid summary judgment."[94]  In his opposition, Plaintiff contends that he has established a prima facie case of age discrimination to survive summary judgment as there are disputes of material fact whether his age was a factor in his termination.[95]  In its reply, Defendant maintains that summary judgment is warranted because (1) "[Mr. Pannone] has not introduced admissible evidence to establish a prima facie case of age discrimination" and (2) "no evidence establishes the stated reasons for the termination were pretext for discrimination."[96]

The first step of the *McDonnell Douglas* framework asks whether a plaintiff has established the four components of a prima facie case.[97]  When considering

---

[93] Docket 1-3 at 6.

[94] Docket 40 at 14-26 (cleaned up).

[95] Docket 43 at 37.

[96] Docket 47 at 5-15 (cleaned up).

[97] *Caldrone*, 2025 WL 2811320, at *2.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 20 of 39
Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 20 of 39

the evidence in the light most favorable to Plaintiff, Plaintiff has met the initial burden of establishing the four requisite components: Plaintiff was over 40 years old, he has presented some evidence that he was performing his job satisfactorily, and he was terminated on June 9, 2023. As to the fourth component, Plaintiff has presented some evidence that he was replaced by substantially younger employees.

CITCE appears to only dispute the second and fourth components: whether Plaintiff's job performance was satisfactory and whether he was replaced with substantially younger employees. On job performance, Plaintiff has presented evidence that he received multiple favorable performance reviews[98] and merit increases in 2021 and 2022.[99] This evidence is sufficient to present a triable issue of fact. On whether Plaintiff's position was filled by a younger employee after his employment was terminated, Plaintiff has presented some evidence that after his termination, he was replaced with substantially younger employees.[100] At his deposition, Mr. Malto testified that CITCE hired two new IT employees: Doug Davey and Mike Risinger, who were both approximately 20 years younger than Plaintiff.[101] Ten years is the presumptive threshold for a substantial age

---

[98] *See, e.g.*, Docket 40-1 at 79-86, 96-103, 109-17.

[99] *See* Docket 40-1 at 122-24.

[100] Docket 43-1 at 20-21 ("Yes, sir... we brought in two systems analysts... Doug Davey... And Mike Risinger.").

[101] Docket 40-1 at 75.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 21 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 21 of 39

difference.[102]  CITCE argues that these new hires did not replace Plaintiff; rather, they took on different functions.[103]  At oral argument, Defendant contended that it did not rehire for Plaintiff's position, as it was reorganizing that department and changing how the IT department operated.[104]  Although the parties have not provided the job description for the "System Analyst," based on that job title, and Plaintiff's job description as a Software Developer involving integration across multiple IT systems,[105] the Court agrees with Plaintiff's assertion, especially when viewed in the light most favorable to Plaintiff, that it remains a "factual issue over whether [the new hires'] job duties were the same as his."[106]  At the summary judgment stage, Plaintiff has demonstrated genuine issues of fact remain as to whether the new hires replaced Mr. Pannone.

Having established a prima facie case, step two of the *McDonnell Douglas* framework requires Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.[107]  Defendant asserts that it terminated Plaintiff due to Plaintiff's sarcastic, unprofessional, and uncooperative conduct that

---

[102] *France*, 795 F.3d at 1174.

[103] Docket 47 at 8; *see also* Docket 40-1 at 74-75.

[104] Docket 75 at 27 ("They were reorganizing that department . . . they were changing the nature of the work that was being done in that department. As is common in IT departments over the course of years . . . when things are modernizing and the roles of those and responsibilities of positions change.").

[105] *See* Docket 17-1 at 169-71 ("Monitor and manage the performance of CITC data systems.").

[106] Docket 75 at 25.

[107] *See* 411 U.S. at 802–03; *Caldrone*, 2025 WL 2811320, at *6.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 22 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 22 of 39

violated CITCE's "Code of Conduct," as shown by the May 2023 emails from Mr. Pannone.[108] Plaintiff does not refute that when Mr. Chlup reached out to him in May 2023, Plaintiff responded with the May 2023 series of emails.[109] The Court finds that Defendant has proffered a facially legitimate, nondiscriminatory rationale for its termination decision.

Under the final step of the *McDonnell Douglas* framework, the burden shifts back to Plaintiff to demonstrate that there are triable issues of fact as to whether CITCE's stated rationale for the termination was pretextual.[110]  A plaintiff may do so "either directly by persuading the court that a discriminatory reason likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence."[111]

Here, Plaintiff has also presented enough evidence to create a triable issue on pretext for a jury to determine on his age discrimination claim.  Plaintiff has provided some evidence, through his 2021 and 2022 evaluations and merit increases, of overall satisfactory job performance.[112]  There is also evidence of his supervisor, Mr. Malto, making ageist comments such as, "the old guys, you know, are struggling with the – with the newer technology."[113]  Plaintiff has also noted

---

[108] Docket 40-2 at 1-18.

[109] *See* Docket 40-1 at 31-35.

[110] *See* 411 U.S. at 804.

[111] *Caldrone*, 2025 WL 2811320, at *6 (alterations in original) (quoting *Diaz*, 521 F.3d at 1212).

[112] Docket 40-1 at 79-86, 96-103, 109-17, 122-24.

[113] Docket 40-1 at 42-43.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 23 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 23 of 39

that five of the six older employees above the age of 40 within the IT department had left CITCE over a relatively short time period.[114]

In *Caldrone*, the employee alleged that his supervisor told him that he was "out of touch" and "too old for this business" after the employee told the supervisor that he was 56 years old.[115]  The employee also asserted that the supervisor told him to "start thinking about retiring."[116]  The Ninth Circuit reversed the district court's order granting the employer's motion for summary judgment because "[t]hat evidence may or may not convince a jury that the ultimate promotion decision was based on age, but for purposes of establishing a prima facie case, it creates an issue of fact about whether [the employer] 'considered age in general to be significant in making its promotion decisions.'"[117]

Here too, the Court finds that Plaintiff has presented enough evidence to create a triable issue of fact on pretext with respect to his ADEA claim.  Indeed, Defendant appears to recognize that there is a factual dispute as to why Plaintiff was terminated: "It is evident CITCE and [Mr. Pannone] interpret differently [Mr. Pannone's] attitude and statements in the email chain that began on May 15,

---

[114] *See* Docket 43-7 at 1; Docket 43 at 8-9; Docket 43-1 at 12.

[115] *Caldrone*, 2025 WL 2811320, at *5.

[116] *Id.*

[117] *Id.* (citing *France*, 795 F.3d at 1174).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 24 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 24 of 39

2023."[118]   For the foregoing reasons, CITCE's motion for summary judgment on Plaintiff's ADEA claim is denied.

## II.   Family Medical Leave Act ("FMLA")

### A. FMLA Interference

The threshold issue to determine is whether Plaintiff was on FMLA leave as of his termination in June 2023.  Plaintiff contends that he was "still on intermittent FMLA status" at the time of his termination.[119]  Defendant asserts that it provided all FMLA leave that Plaintiff requested and none was requested at all by him in 2023.[120]  Defendant also contends there is no causal link between Plaintiff's FMLA leave in 2022 and any adverse employment action.[121]

The Court agrees with Defendant for the following reasons. First, Plaintiff's supervisors did not appear to discourage Plaintiff from availing himself of the FMLA's protections.[122]   Second, the more than six-month gap between the fall 2022 FMLA leave and the June 2023 termination is insufficient proximity in time for Plaintiff to establish causation.

The undisputed evidence confirms that Plaintiff's FMLA leave terminated in December 2022, or in January 2023 at the latest.  The physician certification dated

---

[118] Docket 47 at 2.

[119] Plaintiff cites to his unfiled affidavit: "'As of the date of his termination, Mr. Pannone was still on intermittent FMLA status' on June 9, 2023." Docket 43 at 23.

[120] Docket 40 at 27-28.

[121] Docket 40 at 27-29.

[122] *See, e.g.*, Docket 40-1 at 66 ("I tried to accommodate, as much as I can.").

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 25 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 25 of 39

November 3, 2022, stated that Plaintiff's condition would require "1-2 months recovery" and Plaintiff would likely need to work a reduced schedule until December 8, 2022, with no work at all the week following surgery on November 19, 2022.[123] And in his interrogatory responses, Plaintiff acknowledged that he did not request FMLA leave in 2023 and he did not file any updated health certifications supporting a request for continued intermittent FMLA leave after the November 3, 2022 certification.[124]

Plaintiff has provided some evidence that he told CITCE that he expected to need follow-up medical care for his eye and possible surgery in April and/or August 2023.[125] But there is no record of any additional FMLA leave request in 2023 and the record does not contain any FMLA Intermittent Logs for 2023.[126]

For the foregoing reasons, Plaintiff has failed to demonstrate that there is a genuine dispute as to FMLA intermittent leave; Plaintiff was not on FMLA leave status when he was terminated in June 2023.

## B. FMLA Claim Based on Plaintiff's 2022 FMLA Leave

Plaintiff appears to also assert that his termination was motivated, at least in part, by the fact that he took intermittent FMLA leave in the fall of 2022.[127]

---

[123] Docket 43-2 at 12-18.

[124] Docket 40-1 at 127.

[125] Docket 43-2 at 25-26.

[126] *But see* Docket at 43-2 at 19-24 (2022 FMLA Intermittent Logs).

[127] Docket 43 at 6-7; *see also* Docket 43 at 27 ("[Mr. Pannone's] medical condition and FMLA usage were being used as negative factors in employment decisions, in direct violation of the

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 26 of 39

To establish a prima facie FMLA claim, Plaintiff must "prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]."[128]

Plaintiff asserts that Defendant bears the burden to justify Plaintiff's termination because he was on FMLA-protected leave at the time of his termination and that Defendant "cannot meet its *Sanders* burden due to multiple procedural failures and evidence of pretext."[129] However, the Court has found that Plaintiff was not on protected FMLA leave when he was terminated in June 2023. Thus, the *McDonnell Douglas* burden-shifting framework that applied to the failure to reinstate claim in *Sanders* is not applicable here. Rather than burden-shifting on the FMLA claim, *Bachelder*'s negative factor inquiry applies in this case involving the termination of an employee that was not on FMLA-protected leave. "No scheme shifting the burden of production back and forth is required."[130]

Here, Plaintiff presents no evidence that at any point in May or June 2023 was his 2022 FMLA leave discussed in connection with the decision to terminate his employment.[131] Plaintiff has not raised a dispute of material fact that the reason

---

FMLA.").

[128] *Bachelder*, 259 F.3d at 1125.

[129] Docket 43 at 24.

[130] *Bachelder*, 259 F.3d at 1125.

[131] *See* Docket 40-1 at 75-77; Docket 40-2 at 2. In the series of May 2023 emails provided by Plaintiff, at no time does any employee at CITCE reference the FMLA leave. Docket 43-12 at 1-14.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 27 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 27 of 39

proffered by Defendant for the termination—that Plaintiff violated CITCE's Code of Conduct with his emails—is pretextual, and that the 2022 FMLA leave was the real reason for the termination.[132]  Indeed, even at oral argument before the Court, Plaintiff's counsel appeared to acknowledge that the alleged motive to terminate Plaintiff was his age, not that he had taken FMLA leave in 2022.[133]

Plaintiff asserts that he was "pushed out" and "silent fired" when Mr. Malto stated that he was assigning Plaintiff's workload to others while Mr. Pannone was out on FMLA leave beginning in October 2022 and recovering from medical treatments.[134]  But as Defendant notes, Plaintiff's "pushed out" contention was asserted before he started his FMLA leave in October 2022.  Plaintiff stated in an email to HR that his exclusion from projects started in August 2022.[135]  That month, Plaintiff complained that although he was assigned projects by Mr. Malto, he was not being included in discussions regarding the "bigger picture."[136]  Further, by Plaintiff's own admission, when he went on FMLA leave, he requested a reduced workload based on his physician's certification.[137]  Naturally, one would expect a supervisor to lower an employee's workload who was on intermittent leave.

---

[132] Docket 40 at 28-30.

[133] Docket 75 at 19 ("He was absolutely terminated because of age discrimination. The method they used was FMLA discrimination.").

[134] Docket 40-1 at 18, 44, 53, 66; *see also* Docket 40-1 at 27-28.

[135] Docket 43-11 at 1. ("Starting Aug [*sic*] 22 I had no place at the table at all and nothing but 'I don't knows' [*sic*] from [Mr. Malto].").

[136] Docket 43-11 at 1-3.

[137] Docket 40-1 at 139.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 28 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 28 of 39

In sum, Plaintiff has presented no evidence that supports his assertion that his taking of FMLA-protected leave in the fall of 2022 was a negative factor in the decision to terminate him on June 9, 2023.

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's FMLA claim.

### III.   Motion for Case Terminating Spoliation Sanction

#### A. Rule 37(e) violation

Defendant asserts that Plaintiff's deletion of relevant electronically stored information ("ESI") from his devices constitutes a Rule 37(e) violation.[138]   The Court agrees with Defendant that the prerequisites of Rule 37(e) are met and that sanctions are warranted.

First, large volumes of ESI were lost even though Plaintiff was on notice since March 2025 that the destroyed ESI should have been preserved.  On March 12, 2025, Defendant's counsel sent Plaintiff's counsel a letter with two requests (that would be repeated again later in the same letter).[139]   The first request was that "all drives, devices, and copies of CITCE's documents be preserved as they currently exist, where they are currently stored, so that metadata associated with the download and taking of this information is adequately preserved."[140]

---

[138] Docket 58 at 1.

[139] Docket 17-1 at 107-09.

[140] Docket 17-1 at 107.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 29 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 29 of 39

Defendant's counsel directed Plaintiff's counsel to ensure that the information on Plaintiff's devices "should not be deleted or destroyed at this time."[141] The second request was that "any drives or devices containing copies of the account be securely maintained going forward exclusively by your office (and not by Mr. Pannone)."[142] Defendant's counsel requested Plaintiff's counsel take possession of Plaintiff's devices because Defendant's counsel did "not trust the security of its confidential and proprietary files in [Mr. Pannone's] possession."[143] Despite these requests and warnings, Mr. Merchant found subsequent evidence of deletion of ESI by Plaintiff from his devices, with much of it occurring after the Court's order to present those devices for forensic review.[144]

Second, the Court finds that there is both direct and circumstantial evidence that Plaintiff "acted with the intent to deprive another party of the information's use in the litigation."[145] That these deletions took place after counsel's admonition and the Court's order for forensic review is strong circumstantial evidence that the deletions were intended to deprive CITCE of certain information in Plaintiff's possession.

In opposition, Plaintiff asserts that there is no proof that any responsive ESI

---

[141] Docket 17-1 at 109.

[142] Docket 17-1 at 107.

[143] Docket 17-1 at 109.

[144] Docket 58-1 at 3-9.

[145] Fed. R. Civ. P. 37(e).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 30 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 30 of 39

was actually lost because Defendant had not identified any specific documents from the forensic search that were deleted.[146] Plaintiff cites to Second Circuit case law that "courts must find by a preponderance of evidence that a party acted with specific 'intent to deprive.'"[147]

The Court does not agree with Plaintiff's assertion that Defendant must "definitively establish what specific data, if any, was actually lost or whether any responsive ESI was destroyed."[148] A litigant would be hard pressed to identify the specific data that has been deleted when that data no longer exists. The Court agrees with Defendant that "[Plaintiff] cannot excuse away that he deleted relevant material subject to a litigation dispute in direct violation of this Court's own Order."[149]

Next, Plaintiff justifies his deletions because under Defendant's "Technology Allowance Policy," "all deletion activity occurred in compliance with CITCE's explicit termination policies requiring employees to delete company documents from personal devices upon leaving employment."[150] Although this company policy may have warranted Plaintiff deleting all CITCE documents in June 2023 following his termination, Plaintiff instead retained all CITCE documents at that

---

[146] Docket 65 at 10-11; *see also* Docket 58-1 at 3-4.

[147] Docket 65 at 6 (quoting *Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025)).

[148] Docket 65 at 22; *see also* Docket 58-1 at 3-4.

[149] Docket 69 at 2 (emphasis omitted).

[150] Docket 65 at 8.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 31 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 31 of 39

time (albeit without disclosing to CITCE that he had done so until March 2025). The Court in July 2025 granted Defendant's motion to compel the production of this specific evidence.[151] Plaintiff cannot successfully invoke this company policy after the Court, on July 25, 2025, ordered Plaintiff to provide his devices with all the relevant CITCE information and post-termination employment search documentation preserved.[152]

The Court disagrees with Plaintiff's counsel that "Mr. Pannone consistently demonstrated extraordinary cooperation throughout discovery, offering multiple reasonable alternatives that CITCE systematically rejected in favor of increasingly intrusive demands that far exceeded the scope necessary to address their stated concerns about a single .pst file."[153] Rather, the Court finds that Plaintiff intentionally deleted ESI from his devices with the intent to deprive CITCE of that information.

## B. Rule 37(e)(2) sanction

Because the Court finds that Plaintiff violated Rule 37(e) by deleting relevant ESI with the intent to deprive Defendant of this information, the Court may consider, pursuant to Rule 37(e)(2), "instruct[ing] the jury that it may or must presume the information was unfavorable" to Plaintiff, or dismissal of this action.

---

[151] Docket 49.

[152] *See* Docket 74 at 13, 24.

[153] Docket 65 at 8.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 32 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 32 of 39

CITCE asserts dismissal with prejudice is warranted because "a terminating sanction is the only appropriate remedy for [Mr. Pannone's] spoliation."[154] CITCE asserts that terminating sanctions are required because lesser sanctions, such as previously ordered monetary sanctions and attorneys' fees and costs awards have not served as a sufficient deterrent to Plaintiff.[155] CITCE also contends that "[Mr. Pannone] has deprived CITCE of important information that likely would have destroyed his credibility and eviscerated the basis of his asserted damages, as well as deprived CITCE of information essential to its defenses and potential counterclaims in this case."[156]

The Court finds that litigation-ending sanctions are not warranted, as CITCE will be able to present its evidence at trial of the reasons for Plaintiff's termination. But the Court finds that imposing a lesser sanction on Plaintiff is warranted for two reasons. First, in light of Plaintiff's deletion of CITCE's documents and data in his possession, Defendant is unable to find additional evidence relating to when he downloaded CITCE's information. This evidence impairs Defendant's ability to limit damages pursuant to the after-acquired evidence doctrine, obtain equitable relief pursuant to the unclean hands doctrine, and/or raise potential future counterclaims. Second, it is unknown whether Defendant has received all of

---

[154] Docket 58 at 11.

[155] Docket 58 at 13.

[156] Docket 58 at 13.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 33 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 33 of 39

Plaintiff's documents related to his post-termination job search, or whether Plaintiff deleted selective documents on this topic before the forensic review.[157]

In light of the foregoing, the Court finds that the following sanctions are warranted: (1) awarding Defendant its reasonable attorneys' fees and costs incurred in bringing the sanctions motion; (2) awarding Defendant the cost of the forensic analysis conducted by Deep Forest that the Court ordered during the July 25, 2025 hearing on the motion to compel;[158] and (3) according to Defendant the opportunity to present evidence of the spoliation, as to which Plaintiff may cross examine, and an instruction to the jury that it may consider that evidence and may presume the deleted information was unfavorable to Plaintiff.[159] In addition, the Court will permit the parties to present limited evidence and argument in this regard, consistent with this order.[160]

## IV. Motion to Assert Privilege Re: Deep Forest Forensic Analysis

On September 19, 2025, Plaintiff's counsel provided three sets of files to the Court for *in camera* review.[161] In this motion, Plaintiff's counsel cites no case law

---

[157] *See* Docket 58 at 5.

[158] Docket 49.

[159] Docket 58-4 at 1-2. The Court notes that Defendant has filed proposed jury instructions with respect to spoliation of ESI. Docket 83 at 44-45.

[160] The Court does not intend to permit extensive evidence or argument on any ancillary matters.

[161] Plaintiff's counsel submitted to the Court via email three different batches of files titled "3:24-cv-00220-SLG Pannone v. CITCE: Privilege Log File 1"; "3:24-cv-00220-SLG Pannone v. CITCE: Privilege Log File 2"; and "3:24-cv-00220-SLG Pannone v. CITCE: Privilege Log File 3."

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 34 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 34 of 39

and does not provide the allegedly privileged documents. The Court is not entirely aware of what is in the submission for *in camera* review. Furthermore, the motion contains contradictory statements. For instance, it states that "Mr. Pannone has reviewed the files DFS has produced" but then states, "these documents were not produced to Mr. Pannone by DFS."[162] The Court has undertaken an *in camera* review of the documents attached to Plaintiff's motion and considers each set in turn.

The first batch of documents are all password protected and because no password was shared with the Court, these documents are inaccessible to the Court. The Court orders Plaintiff to produce a hard copy of all these documents to the Court for *in camera* review within three business days of the date of this order. The second batch of documents, the Samsung Galaxy S25 Ultra cellphone forensic report, does not appear to be attorney-client communications, but instead appears to be miscellaneous personal communications between Mr. Pannone and persons that may be unrelated to this lawsuit. The Court orders Plaintiff to produce all these documents to the Court for *in camera* review within three business days of the date of this order.

The third batch of documents are largely incomprehensible and are primarily color-coded Excel files without the underlying documents. Plaintiff classifies some documents as "Dump of Late fathers hard drives [*sic*]" or "Image embedded in a

---

[162] Docket 56 at 1-2.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 35 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 35 of 39

previously explained PDF [] file" followed by a purported privilege such as "Personal financial document." These self-made classifications are not recognized by common law or statutory privileges under the Federal Rules of Evidence. Although it appears that the forensic search may have contained overly broad search terms such as "Tu," Plaintiff had ample opportunity to object to the May 8, 2025 protocol and seek to narrow the search terms but did not do so. The Court agrees with Defendant that "[i]f Pannone had concerns about that term, he should have raised them when the parties conferred on the matter this spring or at the July 25 hearing on this matter."[163] Instead, Plaintiff agreed with the forensic review plan during the July 25, 2025 hearing on the motion to compel, then proceeded to delete ESI off of his devices before the forensic review.

While the Court acknowledges that Plaintiff asserts that many documents are unrelated to this lawsuit or are privileged attorney-client communications,[164] as of the date of this order, the Court still has not accessed any of the underlying documents. Therefore, it is impossible for the Court to conduct an *in camera* review to determine whether the documents that Plaintiff continues to withhold based on attorney-client privilege and "confidential" designations are non-responsive materials. For the foregoing reasons, the motion at Docket 56 is denied. Plaintiff is ordered to produce the results of the forensic review for *in*

---

[163] Docket 69 at 3.

[164] Docket 56 at 1-2.

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 36 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 36 of 39

*camera* review. For each document that Plaintiff is asserting is privileged, Plaintiff must clearly identify which privilege recognized under the Federal Rules of Evidence applies to that document. Further, Plaintiff must submit a sworn certification that he has appropriately identified and submitted the documents into the following three distinct groups: (1) all CITCE-related documents; (2) all job-seeking documents; and (3) all other documents. All of the pages of the documents must also be Bates stamped.

## CONCLUSION

Based on the foregoing, IT IS ORDERED:

1. CITCE's Motion for Summary Judgment at Docket 40 is GRANTED IN PART AND DENIED IN PART as follows:

   a. CITCE's Motion for Summary Judgment as to the FMLA claim is GRANTED; and

   b. CITCE's Motion for Summary Judgment as to the ADEA claim is DENIED.

2. CITCE's Motion for Case Terminating Spoliation Sanction at Docket 58 is GRANTED IN PART as follows:

   a. Defendant will be awarded its reasonable attorneys' fees and costs incurred in connection with the forensic review in bringing this sanctions motion. Defendant will also be awarded the cost of the

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 37 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 37 of 39

forensic analysis conducted by Deep Forest that the Court ordered at Docket 49;[165]

b. At trial, the parties may present evidence and argument related to the lost ESI consistent with this order. Defendant may argue that the jury should presume that the spoliated evidence was unfavorable to Plaintiff and favorable to CITCE; and

c. The Court will instruct the jury that Mr. Pannone was under a duty to preserve ESI on all of his devices containing documents or information but that he failed to do so and that the jury may presume the deleted information was unfavorable to Plaintiff. The Court invites the parties to submit a proposed jury instruction consistent with this order if they have not already done so.[166]

3. Mr. Pannone's Motion to Assert Privilege Re: Deep Forest Forensic Analysis at Docket 56 is DENIED. Mr. Pannone shall produce to the Court all documents and portions of documents identified for production by the forensic review into three separate groups ((1) all CITCE-related documents; (2) all job-seeking documents; and (3) all other documents) with an accompanying sworn declaration by Plaintiff **within three**

---

[165] CITCE may file a motion in support of its proposed fee award within seven days of this order; Plaintiff may file a response within seven days thereafter.

[166] *See*, *e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 995 (N.D. Cal. 2012); *Montoya v. Orange Cty. Sheriff's Dep't*, Case No. SACV 11-1922 JGB, 2013 WL 6705992, at *14 (C.D. Cal. Dec. 18, 2013) (citing *Apple*, 888 F. Supp. 2d. at 995).

Case No. 3:24-cv-00220-SLG, *Pannone v. CITC Enterprises, Inc.*
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 38 of 39

Case 3:24-cv-00220-SLG    Document 88    Filed 11/05/25    Page 38 of 39

**business days of the date of this order, as further described above in this order**.

DATED this 5th day of November, 2025, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cv-00220-SLG, _Pannone v. CITC Enterprises, Inc._
Order re Motions for Summary Judgment, Sanctions, and Privilege
Page 39 of 39

Case 3:24-cv-00220-SLG     Document 88     Filed 11/05/25     Page 39 of 39